UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK LINDSTROM, DO

    Plaintiff,

v.                                                                     Case No. 2:23-CV-212

ASCENSION HEALTH, INC.,
ASCENSION WISCONSIN,
ASCENSION MEDICAL GROUP –
SOUTHEAST WISCONSIN, INC., and
COLUMBIA ST. MARY'S HOSPITAL
MILWAUKEE, INC.

    Defendants.

## VERIFIED COMPLAINT

Plaintiff Mark Lindstrom, DO, by and through his undersigned counsel, brings this Verified Complaint against the Defendants, Ascension Health, Inc., Ascension Wisconsin, Ascension Medical Group - Southeast Wisconsin, Inc., and Columbia St. Mary's Hospital, Inc. In support, Plaintiff alleges as follows:

### INTRODUCTION

1. This action is based on violations of Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352), codified at 42 U.S.C. § 2000e *et seq*. The gravamen of this Complaint is that Defendants unlawfully refused to accommodate, otherwise discriminated against, and subsequently terminated Plaintiff on the basis of an unlawful denial of a religious exemption from Defendants' policy of mandatory vaccination from the coronavirus, officially named severe

1

acute respiratory syndrome coronavirus 2, SARS-CoV-2 ("COVID-19"). Defendants knew or should have reasonably known that Plaintiff holds religious beliefs that prohibit COVID-19 vaccination because he asserted them. Defendants nevertheless failed to provide an interactive process to ascertain his beliefs and entertain possible accommodations. Instead, Defendants denied religious exemptions and terminated Plaintiff. Approximately five weeks into the unpaid suspension, Defendants began asking unvaccinated suspended employees to return to work without requiring any unique infection mitigation protocol than vaccinated employees, demonstrating that accommodating Plaintiff's religious practice would not pose an undue hardship and the termination was unwarranted.

## JURISDICTION AND VENUE

2. This Court has authority over this action pursuant to 28 U.S.C. § 1331, in federal questions raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the common law tort of Wrongful Termination in Violation of Public Policy, breach of contract, and interference with contractual relations. Venue is proper in the Eastern District of Wisconsin under 42 U.S.C. § 2000e-5(f)(3), in that all Defendants maintain significant operations within the Eastern District. This case is appropriate for the assignment in the Milwaukee Division as the principal offices of Defendants Ascension Wisconsin and Ascension Medical Group Southeast Wisconsin, Inc. are located at 400 West Riverwoods Pkwy, Glendale, Wisconsin 53212, and the principal office for Defendant Columbia St. Mary's Hospital, Inc. is 2301 North Lake Drive, Milwaukee, Wisconsin 53211. Furthermore, this matter is related to other cases assigned to the Milwaukee Division of the Eastern District of Wisconsin: *Reilly v Ascension et al*, 2:22-cv-01168-BHL; *Schultz et al v Ascension Health, Inc. et al*, 2:22-

2

cv-01562-BHL; *Bayer v Ascension Health, Inc. et al*, 1:23-cv-7-BHL; and *Johnson v. Ascension Health, Inc. et al*, 22-cv-00051- BHL.

**PARTIES**

3. Plaintiff Mark Lindstrom, DO, earned his degree in osteopathic medicine from the Philadelphia College of Osteopathic Medicine and completed his residency at Ohio State University Hospital in Columbus, Ohio. Plaintiff is a specialist in family medicine and a devout practicing Christian with sincerely held religious beliefs of sanctity of life, sanctity of conscience, and bodily integrity which prohibit him from receiving COVID-19 vaccination.

4. Upon Information and belief, Defendant Ascension Health, Inc. ("Ascension") is the nation's second largest national health system that operates more than 2,600 sites of care in 19 states and the District of Columbia, while providing a variety of services including clinical and network services, venture capital investing, investment management, biomedical engineering, facilities management, risk management, and contracting through Ascension's own group purchasing organization. The principal office for Ascension Health, Inc. is 4600 Edmundson Road, St. Louis, Missouri 63134. Ascension is an "employer" within the meaning of 42 U.S.C. § 2000e.

5. Upon information and belief, Defendant Ascension Wisconsin, is a healthcare provider with a principal place of business at 400 West Riverwoods Parkway, Glendale, Wisconsin, 53212. Ascension Wisconsin is an "employer" within the meaning of 42 U.S.C. § 2000e.

6. Upon information and belief, Defendant Ascension Medical Group - Southeast Wisconsin, Inc. is a healthcare provider with a principal place of business at 400 West

Riverwoods Parkway, Glendale, Wisconsin, 53212. Ascension Medical Group - Southeast Wisconsin, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

7. Upon information and belief, Defendant Columbia St. Mary's Hospital Milwaukee, Inc. is a hospital that delivers specialty and 24/7 emergency care with a principal place of business at 2301 North Lake Drive, Milwaukee, Wisconsin 53211. Defendant Columbia St. Mary's Hospital Milwaukee, Inc. is an "employer" within the meaning of 42 U.S.C. § 2000e.

**FACTUAL BACKGROUND**

8. Plaintiff Mark Lindstrom, DO ("Plaintiff") served as a family physician at the same hospital for over 29 years, providing exceptional care with healing medicine in the most natural way possible.

9. As a caring physician, Plaintiff develops professional relationships with his patients. Over the years, the panel of patients that entrusted Plaintiff created an outstanding family medicine practice which ultimately benefited Defendants.

10. Plaintiff served as a healthcare hero on the frontline of the COVID-19 Pandemic, safely protecting himself and others from COVID-19 by using the shielding procedures, personal protective equipment (PPE), and established infection mitigation protocol established by Defendants.

11. Plaintiff is a devout Christian who holds sincerely held religious beliefs of sanctity of conscience, bodily integrity, and sanctity of life, grounded in his Christian faith, that prohibit him from receiving COVID-19 vaccination.

12. On or about August 4, 2021, Ascension announced a mandatory vaccination policy for influenza and COVID-19. As part of its policy, Ascension purported to provide

4

employees with the opportunity to seek religious or medical exemptions for either vaccine, with the compliance deadline of November 12, 2021.

13. On August 19, 2021, Joseph R. Impicciche, President and Chief Executive Officer of Ascension, sent an email to all Ascension employees, Catholic or not, entitled "Pope Francis: COVID-19 vaccination an 'act of love' and 'moral obligation'". Mr. Impicciche's email asserted there is a moral obligation to be injected with COVID-19 vaccines.

14. In order to submit a request for a religious exemption from the mandatory vaccination policy, Defendants required Plaintiff to use an online religious exemption request forms. The deadline for submitting an online religious exemption request form for either influenza or COVID-19 vaccination was October 1, 2021.

15. In order to submit the online religious exemption request form, employees were required to answer questions about their religious affiliation, their religious beliefs, and how the vaccine violated their moral conscience.

16. Before completing the online religious exemption request form for COVID-19, employees were required to watch a video entitled "COVID-19 Myths and Facts."

17. Employees were also required to assent to a statement which claimed assent to "voluntary resignation" for noncompliance of becoming "fully vaccinated" by November 12, 2021, if the request for religious exemption from vaccination was denied.

18. Plaintiff timely submitted a completed online form for a religious accommodation for both influenza and COVID-19 vaccination, detailing his sincerely held Christian beliefs of sanctity of life, bodily integrity, and sanctity of conscience that prohibit him from receiving influenza and COVID-19 vaccination. For COVID-19 vaccination, Plaintiff specifically detailed his religious convictions of sanctity of life that prohibit COVID-19 vaccination based on the use

of aborted fetal stem cell lines in the development, production, and/or testing of COVID-19 vaccines.

19. Shortly after submitting his requests for religious accommodations for each vaccine, Plaintiff received automated email replies from Ascension's Service Desk ("Service Desk") acknowledging the submissions of his requests for religious accommodations from influenza and COVID-19 vaccination. It is uncertain where the Service Desk is located in the national Ascension network and who serves on the Exemption Review Committee.

20. Within days of submitting his requests for religious exemptions, Plaintiff received similar automated emails from the Service Desk denying his requests for religious accommodations from influenza and COVID-19 vaccination.

21. Plaintiff appealed the denials of his requests for religious accommodations to the Service Desk, providing additional information on his religious beliefs and practices. **Exhibit 1**, *Plaintiff's Requests for Religious Exemptions*. Plaintiff was not provided a contact person to interact with regarding his sincerely held religious beliefs and possible accommodations.

22. Plaintiff's appeal for religious accommodation from influenza vaccination was approved.

23. While his appeal for religious accommodation from COVID-19 vaccination was still under review, the front desk at Plaintiff's clinic began cancelling patients on Plaintiff's schedule after November 12, 2021, over the phone, within earshot of patients in the waiting room about to see Plaintiff, causing trauma for Plaintiff and his loyal patients.

24. On November 5, 2021, Plaintiff's appeal for religious accommodation from COVID-19 vaccination was summarily denied by an automated email from the Service Desk.

6

25. The denial of a religious accommodation left Plaintiff no alternatives. He continued to provide for his patients until November 12, 2021, while referring physicians to his patients whom he entrusted to take over their care.

26. As a result of Defendants' actions, Plaintiff's reputation as a physician suffered, as it created the appearance that he abandoned practice of almost 30 years. His patients who did not see him during his final two weeks of employment were left uninformed and were not provided the decency of a farewell. Plaintiff's practice scattered to the winds, without a decent orderly transition for his patients. Plaintiff values his patients and remains distraught over the treatment they were given by Defendants.

27. Plaintiff filed a religious discrimination claim against Ascension with the Equal Rights Division (ERD) of the Wisconsin Department of Workforce Development (DWD) on November 11, 2021.

28. Oddly, on November 12, 2021, Plaintiff received notice of the assignment of his employment agreement from Columbia St. Mary's Hospital Milwaukee, Inc. to Ascension Medical Group – Southeast Wisconsin, Inc., effective December 26, 2021.

29. Also on November 12, 2021, Defendants sent Plaintiff an email notifying him of pending suspension starting November 13, 2021, if he did not receive at least one dose of the COVID-19 vaccine.

30. Defendants placed Plaintiff on unpaid suspension on November 13, 2021.

31. Within days of the unpaid suspension, Plaintiff received a letter dated November 16, 2021, from the Chief Clinical Officer of Ascension Wisconsin, Gregory Brusko, DO, notifying Plaintiff of "Breach of Physician Employment Agreement" for not becoming "fully vaccinated" against COVID-19. The letter threatened Plaintiff with termination if he did not

receive at least one dose of COVID-19 vaccine within 30 days, and eventually become "fully vaccinated."

32. Within five weeks of the unpaid suspension, Defendants began requesting suspended unvaccinated staff to return to work without requiring any protocol beyond that of vaccinated staff, demonstrating the unpaid suspension, with threat of termination, was unwarranted.

33. Within days of his termination date, Plaintiff was informed by a former manager that his termination was reconsidered. Defendants wanted him to return to work without any conditions or additional infection mitigation protocol beyond that of vaccinated staff.

34. Defendants' reconsideration of his termination was shared with his former coworkers, without his consent. From the first denial of accommodation to the termination and call to return, Plaintiff was not provided the professional decency of privacy.

35. Returning to work with Defendants was not an option for Plaintiff as his trust with Defendants and the rapport in the workplace was destroyed. The unlawful denial of religious accommodations, the lack of privacy, and the correlating adverse employment actions, made it impossible for him to return.

36. As a result of the unpaid suspension and ultimate termination, Plaintiff suffered damages, including financial losses.

37. Plaintiff holds a Right to Sue Notice from the U.S. Equal Employment Opportunity Commission (EEOC).[1] **Exhibit 2**, *Plaintiff's Right to Sue Notice*.

## FIRST CAUSE OF ACTION

---

[1] Although the Right to Sue Notice has an issuance date of August 5, 2022, it was not timely received by Plaintiff or his counsel. The notice was received by email on November 16, 2022, to Plaintiff's counsel after multiple requests, by email and phone, to Adam Carville, Investigator at Chicago office of the EEOC, to obtain the notice.

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq*.] Adverse Employment Action based on Religion Against Defendants**

38. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

39. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

40. Plaintiff was at all relevant times an employee and an applicant covered by 42 U.S.C. §2000e, et seq., prohibiting discrimination in employment based on religion. Defendants were at all relevant times employers for purposes of 42 U.S.C. § 200e, *et seq*.

41. Plaintiff holds sincere religious objections to receiving COVID-19 vaccination.

42. Although Plaintiff informed Defendants of his faith and practices, Defendants disregarded Plaintiff's sincere religious beliefs which conflicted with receiving the COVID-19 vaccine.

43. Defendants refused to converse or interact with Plaintiff regarding his faith to further understand his beliefs and religious practices.

44. Plaintiff's religious accommodation request was denied without Defendants exploring any alternatives that might have been available to accommodate his religious beliefs.

45. Plaintiff's religious beliefs and practices were therefore a motivating factor in placing him on unpaid suspension and ultimate termination.

46. Plaintiff suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

47. Defendants intentionally violated Plaintiff' rights under Title VII.

48. Plaintiff is entitled to lost wages, backpay, compensatory damages, punitive damages, nominal damages, attorneys' fees, costs of suit, a declaration that Defendants violated his rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

49. Plaintiff is entitled to further relief as set forth below in his Prayer for Relief.

## SECOND CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*]**
**Failure to Provide Religious Accommodation Against Defendants**

50. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

51. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it unlawful employment practice to fail or refuse to accommodate the religious beliefs and practices of an employee or prospective employee.

52. Plaintiff suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

53. Plaintiff is entitled to lost wages, backpay, compensatory damages, punitive damages, nominal damages, attorneys' fees, costs of suit, a declaration that Defendants violated his rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

54. Plaintiff is entitled to further relief as set forth in his Prayer for Relief.

## THIRD CAUSE OF ACTION

**Wrongful Suspension in Violation of Public Policy**
**Common Law Tort Against Defendant**

55. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

56. Plaintiff was all times relevant an individual and an employee, prohibiting discrimination in employment.

57. Defendants were all times relevant employers.

58. As a Christian, Plaintiff was always relevant herein members of a protected class.

59. Defendants were aware of Plaintiff's sincere religious beliefs and practices.

60. Plaintiff felt bullied into getting the vaccine, causing anxiety and stress due to Defendants forcing him to choose between his deeply held religious beliefs, and his financial livelihood.

61. Plaintiff was placed on unpaid suspension for requesting religious accommodations in compliance with Title VII of the Civil Rights Act of 1964.

62. Defendants refused to explore available reasonable alternatives to allow Plaintiff to do his job. Defendants refused to engage in any timely, interactive, meaningful, or good faith process with Plaintiff to accommodate his sincerely held religious beliefs.

63. Defendants' refusal to accommodate, or even explore any kind of accommodation of Plaintiff' religious beliefs, was a substantial motivating factor in Defendants' decision to deprive Plaintiff of employment, placing him on unpaid suspension and terminating his employment.

64. Defendants intentionally violated Plaintiff' rights.

65. Plaintiff's religious beliefs and practices were therefore a motivating factor in placing him on unpaid suspension and terminating his employment.

66. At the time of Plaintiff's unpaid suspension and termination, the COVID-19 vaccinations were demonstrating ineffectiveness against stopping transmission of the disease.

67. At the time of Plaintiff's unpaid suspension and termination, it was evident that Defendants, Defendants' affiliates, the State of Wisconsin, and the nation were experiencing severe employee shortages in healthcare organizations.

68. There were no valid reasons whatsoever for placing Plaintiff on unpaid suspension and terminating his employment.

69. Plaintiff suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

70. Defendants intentionally violated Plaintiff's rights.

71. Plaintiff is entitled to lost wages, backpay, compensatory damages, punitive damages, nominal damages, attorneys' fees, costs of suit, a declaration that Defendants violated his rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

72. Plaintiff is entitled to further relief as set forth in his Prayer for Relief.

# FOURTH CAUSE OF ACTION

**Breach of Employment Contract – Against Columbia St. Mary's Hospital Milwaukee, Inc., Ascension Wisconsin, and Ascension Medical Group – Southeast Wisconsin, Inc.**

73. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

74. Plaintiff has a valid written contract with Defendant Columbia St. Mary's Hospital Milwaukee, Inc. ("CSM") which is part of Ascension Medical Group – Southeast Wisconsin, Inc. (collectively "Employer"). **Exhibit 3**, *Plaintiff's Employment Agreement*.

75. The term "Policies of Employer" or "Policies" is expressly defined by Article 1.1 of Plaintiff's employment contract to "mean the personnel policies and other written policies, practices, and procedures of Employer, Ascension Medical Group ("AMG"), and or Ascension Wisconsin (the "Health Ministry") and the bylaws and rules of the medical staff(s) of all hospitals and facilities where [Plaintiff] has privileges."

76. The term "Employer" does not include policies of Ascension.

77. Plaintiff's contract did not include suspension without pay.

78. However, CSM and AMG placed Plaintiff on unpaid suspension in violation of his written contract.

79. As a result of the unpaid suspension, Plaintiff suffered damages, including financial loss.

80. On November 16, 2021, Plaintiff received a letter providing a 30-day notice termination notice, breaching Plaintiff's contract that stated:

> As you know, *Ascension* announced a COVID-19 vaccination requirement on or about July 27, 2021 (the "Vaccine Requirement") which required you to be full vaccinated against COVID-19 and submit documentation of your vaccination status no later than November 12, 2021 or be approved for an exemption by this same

date. You have not submitted your COVID-19 vaccination status or have been approved of an exemption as of today. We are writing to notify you that you are in breach of the Agreement with Ascension Medical Group Policies.

(emphasis added)

81. Ascension's "Vaccine Requirement" alleged in the termination notice is not set forth in a written policy provided to CSM or AMG employees. Ascension issued letters, press releases, questions and answers, and other information about "associates" becoming "fully vaccinated" against COVID-19 vaccine. Plaintiff is unaware of any written mandatory COVID-19 vaccination policy issued by CSM or AMG. Plaintiff's contract does not permit unpaid suspension or termination on alleged noncompliance with *Ascension's* requirements.

82. Article 6.2 of the contract states "Health Ministry has in place a Corporate Responsibility Program (the "Program") which has as its goal to ensure that Employer complies with federal, state, and local laws and regulations."

83. The unlawful denial of Plaintiff's request for religious exemption violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,

84. Defendants attempted coercion to force COVID-19 vaccination on Plaintiff by using unfair economic pressure that is contrary to emergency use authorizations which specifically state individuals are not to be coerced and must have the option to accept or refuse administration of products approved by the Secretary of the Department of Health and Human Services for "emergency use." *See*, e.g. 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

85. Plaintiff has suffered lost wages and other injuries as a result of the foregoing wrongful breaches of his written employment contract.

86. Plaintiff is entitled to lost wages, backpay, compensatory damages, punitive damages, nominal damages, attorneys' fees, costs of suit, a declaration that Defendants violated

**14**

Case 2:23-cv-00212-BHL   Filed 02/14/23   Page 14 of 17   Document 1

his rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

87. Plaintiff is entitled to further relief as set forth in his Prayer for Relief.

## FIFTH CAUSE OF ACTION

**Interference with Contractual and/or Business Relations – Against Ascension**

88. Plaintiff restates the foregoing paragraphs as if fully set herein.

89. Plaintiff had a written contract of employment with CSM and AMG.

90. Ascension was aware of the valid written contract Plaintiff had with CSM and AMG.

91. Ascension intentionally interfered with the employment contracts and valuable employment relationship of Plaintiff with CSM and AMG, influencing and/or inducing CSM and AMG to suspend and terminate Plaintiff, breaching Plaintiff's employment contract.

92. As a result of Ascension's intentional interference with contractual relationship, CSM and AMG terminated Plaintiff, causing stress and anxiety.

93. Ascension's interference with Plaintiff's employment contract caused Plaintiff damages, including financial loss.

94. Ascension's interference with Plaintiff's employment contract was malicious, willful and wanton, in bad faith and deprived Plaintiff of his religious rights.

95. As a result of Ascension's wrongful actions, Plaintiff has been injured and suffered irreparable harm.

96. Plaintiff is entitled to further relief as set forth in his Prayer for Relief.

## SIXTH CAUSE OF ACTION

**Conspiring with Ascension to Interfere with Contractual Relations – against**

**Columbia St. Mary's Hospital Milwaukee, Inc., Ascension Wisconsin and Ascension Medical Group – Southeastern Wisconsin, Inc.**

97. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

98. Ascension Wisconsin, CSM, AMG conspired with Ascension to intentionally and willfully breach Plaintiff's employment contract and thereby joined Ascension's interference with contractual relations.

99. Like Ascension, CSM's and AMG's wrongful motives were to deprive Plaintiff of his religious rights, coerce Plaintiff into taking COVID-19 vaccination against his faith, using unfair economic pressure.

100. As a result of these wrongful actions, Plaintiff has suffered damages, including financial loss.

101. Plaintiff is entitled to further relief as set forth in his Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court grants relief as follows:

A. Award Plaintiff backpay, including past loss wages and benefits, plus interest;

B. Award Plaintiff other and further compensatory damages in an amount according to proof;

C. Award Plaintiff noneconomic damages, including but not limited to damages for emotional distress and pain and suffering;

D. Award Plaintiff reasonable attorneys' fees and costs of suit.

E. Award Plaintiff punitive damages;

F.  Award Plaintiff nominal damages;

G.  Enjoin Defendants from enforcing their discriminatory policies;

H.  Declare that Defendants have violated Title VII of the Civil Rights Act; and

I.  Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated: February 14, 2023

/s/ Carol Lee Ferrero
Carol Lee Ferrero
PACIFIC JUSTICE INSTITUTE
9714 North Valley Hill Drive
Mequon, Wisconsin 53092
Phone: 262-227-7203
cferrero@pji.org

*Attorney for Plaintiff*